OPINION *Page 2 
{¶ 1} Appellant, Ray E. Basham, appeals from his convictions and sentences in the Muskingum County Court of Common Pleas on one count of Rape a felony of the first degree in violation of R.C. 2907.02(A)(1)(b) and one count of Gross Sexual Imposition a felony of the third degree in violation of R.C. 2907.05(A)(4). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The victim, Shana Miller, testified that she was born September 3, 1992 and that she lived with her father and stepmother. She indicated Jamie Roberts is her stepfather and that she had known appellant for four to five years. Jamie Roberts is the nephew of the appellant. Jamie Roberts is currently in prison for rape of Shana Miller. Shana Miller's sister, Kim Miller, is engaged to Jamie Roberts. (1T. at 100).
 {¶ 3} Shana Miller testified that appellant began touching her in the area of her vagina some time in the fall of 2003 when she was in fifth grade. (1T. at 114). Shana testified that the next day that appellant touched her and her sister over their clothes. (1T. at 117). She further testified that appellant would enter the bedroom where she and her sister were sleeping and lay down between the sisters. Shana testified that she was aware that appellant was having sex with her sister because she could hear them. (1T. at 118). She further testified that appellant then left the room and when he returned he inserted his penis into her, Shana's, vagina. (1T. at 119-120). Shana indicated that she never talked to her sister, Kim Miller, about this. (1T. at 121). In her testimony, she indicated that appellant put his penis in her mouth if she was on her period. (1T. at 120-121). Shana testified that the last time there was sexual contact was January 13, 2005 *Page 3 
on the kitchen floor. She indicated that she reported this activity to her mother on January 16, 2005. (1T. at 124).
 {¶ 4} No forensic evidence corroborated any testimony of the victim.
 {¶ 5} Kim Miller is the sister of Shana Miller and is age 21. (1T. at 131). Kim Miller testified she believes that her sister is a liar in regards to activities involving Jamie Roberts. (1T. at 133). Kim Miller testified that she saw the appellant having sex with Shana. (1T. at 133). She indicated that she knew the appellant and Shana were having sex due to "noises" and the fact that their bodies were moving. (1T. at 135).
 {¶ 6} Joshua Collins testified as a witness for the State of Ohio. Mr. Collins testified that while in the same jail cell appellant admitted the allegations contained in the indictment. (1T. at 158). Mr. Collins was in jail for receiving stolen property. He was unsure of when he heard these alleged statements.
 {¶ 7} Charles Newman testified that he was also in the cell with appellant and Mr. Collins. He did not hear the appellant confess. Mr. Newman recalled when Joshua Collins was talking with appellant, that the appellant told Mr. Collins that he would not discuss his case. (1T. at 182).
 {¶ 8} Kelly Justus, a nurse practitioner, testified that she examined Shana Miller on January 26, 2005. (1T. at 169). She testified that she took an oral history that there was "abuse." However, Ms. Justus never specified what she had been told by Shana Miller. Ms. Justus further testified that Shana's physical examination was normal. She indicated that normal could mean that the alleged victim, Shana Miller, was still a virgin. (1T. at 172-175). *Page 4 
 {¶ 9} Nick Basham, the son of appellant, testified that he had never observed his father do anything inappropriate with any of the visitors to the house, including Shana and Kim. He further had never seen or heard anything unusual. (1T. 196-197).
 {¶ 10} Appellant was charged with three counts of Rape (RC 2907.02), felonies of the first degree, and three counts of Gross Sexual Imposition (RC2907.05), felonies of the third degree.
 {¶ 11} A jury found appellant guilty on December 13, 2006 of Count 1: Rape [RC 2907.02(A) (1) (b)] and Count 4: Gross Sexual Imposition [RC2907.05(A) (4)]. Appellant was found not guilty of Counts 2 and 3(Rape) and Counts 5 and 6 (Gross Sexual Imposition). (2T. 252-253).
 {¶ 12} On January 19, 2007 prior to sentencing the trial court conducted a hearing pursuant to R.C. 2950.09. The court after reviewing the evidence presented found appellant to be a sexual predator. The trial court further sentenced appellant to serve a stated prison term of ten years on count one and five years on count two; consecutive, for an aggregate sentence of fifteen years. (Sentencing Hearing T. 19) Appellant was given 122 days credit for time served.
 {¶ 13} Appellant has timely appealed raising the following eleven assignments of error:
 {¶ 14} "I. THE COURT ERRED IN GIVING THE HOWARD CHARGE AND GIVING OF SUCH WAS A VIOLATION OF DUE PROCESS.
 {¶ 15} "II. THE COURT ERRED IN DENYING JURORS THE RIGHT TO TAKE NOTES DURING THE TRIAL THOUGH ADMITTING JURORS HAD AN INABILITY TO *Page 5 
REMEMBER "FRESHLY" GIVEN JURY INSTRUCTIONS AND NEEDED WRITTEN INSTRUCTIONS.
 {¶ 16} "III. THE COURT ERRED IN FAILING TO MERGE COUNTS ONE AND FOUR FOR SENTENCING PURPOSES.
 {¶ 17} "IV. THE COURT ERRED DURING VOIR DIRE AND ARGUMENT, ALLOWING THE STATE TO REPEATEDLY STATE THAT THE COURT WOULD INSTRUCT THAT ONLY ONE WITNESS WAS NECESSARY TO TESTIFY TO SUPPORT A RAPE CONVICTION.
 {¶ 18} "V. THE COURT ERRED IN EXCUSING JUROR DREIER FOR CAUSE.
 {¶ 19} "VI. THE VERDICT IN COUNTS ONE AND FOUR ARE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 20} "VII. THE COURT ERRED IN ALLOWING THE STATE TO INAPPROPRIATELY VOUCH FOR TRUTHFULNESS OF A WITNESS (T. 132-133, 216) AND ALLOWED THE STATE TO COMMENT ON THE APPELLANT'S RIGHT TO REMAIN SILENT AND NOT TESTIFY DURING HIS TRIAL.
 {¶ 21} "VIII. THE COURT ERRED IN ALLOWING THE TESTIMONY OF AN "EXPERT" WHO TESTIFIED SHE WAS QUALIFIED TO DIAGNOSE (T. 172), YET MADE NO FINDINGS/DIAGNOSIS AND ONLY TESTIFIED AS TO IRRELEVANT HEARSAY FROM SHANA MILLER.
 {¶ 22} "IX. THE COURT ERRED IN FINDING APPELLANT A SEXUAL PREDATOR BASED ON THE EVIDENCE HEREIN. *Page 6 
 {¶ 23} "X. THE COURT ERRED IN GIVING MAXIMUM CONSECUTIVE SENTENCES CONSIDERING SENTENCING STATUTES R.C. 2929.11 THROUGH 2929.14, AND LACK OF ANY PRIOR CRIMINAL HISTORY.
 {¶ 24} "XI. THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS DEPRIVED APPELLANT OF A FAIR TRIAL."
 I. {¶ 25} Appellant argues in his first assignment of error that the trial court erred by rendering a Howard charge when it did, as it could not reasonably be determined that the jury was deadlocked. In State v.Howard (1989), 42 Ohio St.3d 18, the Ohio Supreme Court approved a supplemental charge to be given to juries that have become deadlocked on the question of conviction or acquittal. The Howard charge states:
 {¶ 26} "* * * The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views *Page 7 
and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors." Howard, at paragraph two of the syllabus. In the present case, the trial court's charge tracked the language inHoward.
 {¶ 27} Crim.R. 30 provides that a party may not assign as error the giving or failure to give an instruction unless he objects before the jury retires to consider its verdict. Where a defendant fails to raise a timely objection to the giving or failure to give an instruction, the defendant has waived all but plain error. State v. Adams (1980),62 Ohio St.2d 151, 154. Initially, there is no indication in the record that appellant raised any objection to the trial court's decision to issue aHoward charge to the jury and, therefore, has waived all but plain error. In this case, however, the trial court did not commit any error in issuing this charge to the jury, plain or otherwise.
 {¶ 28} The decision to give a Howard charge is reviewed under an abuse of discretion standard. State v. Shepard, 10th Dist. No. 07AP-223, 2007-Ohio-5405 at ¶ 11; State v. Long (Oct. 12, 2000), Cuyahoga App. No. 77272. There is no required period that a trial court must wait in order for the Howard charge to be appropriate. As noted by the Court of Appeals for the Tenth District in Shepard, supra, a trial court's delivery of the Howard charge after only a few hours of deliberation has been upheld in numerous *Page 8 
cases. See, e.g., State v. Clifton, 172 Ohio App.3d 86, 2007-Ohio-3392, at ¶ 28 (the jury deliberated for less than two hours before asking what the option was if they could not agree, to which the trial court responded with the Howard charge); State v. Witcher, Lucas App. No. L-06-1039, 2007-Ohio-3960 (delivery of the Howard charge after two hours of deliberation); State v. Nutt, Ross App. No. 06CA2926, 2007-Ohio-3031, at ¶ 12 (trial court provided the Howard charge after approximately two hours of jury deliberations); State v. Edwards, Trumbull App. No. 2006-T-0038, 2006-Ohio-6349, at ¶ 28 (approximately five and a half hours after beginning its deliberations, the jury submitted a question to the court asking what they should do when they cannot come to a unanimous decision); State v. Adams, Jefferson App. No. 02 JE 32, 2003-Ohio-1225 (jury deliberated four hours before trial court gave theHoward charge); State v. Smith, Montgomery App. No. 19370, 2003-Ohio-903 (jury deliberated three hours before the trial court gave theHoward charge). Accordingly, in the case at bar, we find no error based solely upon the period of deliberation that had elapsed before the charge was given.
 {¶ 29} In addition, although appellant claims that the court gave theHoward charge before it could be determined that the jury was deadlocked, there is no formula provided to determine exactly when a jury is deadlocked and exactly when the supplemental charge fromHoward should be read to the jury. State v. Minnis (Feb. 11, 1992), Franklin App. No. 91AP-844. Although the jury did not specifically indicate it was "deadlocked," there is no requirement that the jury explicitly indicate such. Id. (the jury need not expressly state that it is deadlocked). "Whether the jury is irreconcilably deadlocked is essentially `a necessarily discretionary determination' for the trial court to *Page 9 
make." Brown, 2003-Ohio-5059, at ¶ 37, citing Arizona v. Washington
(1978), 434 U.S. 497, 510. There is no "bright-line test" for determining when a jury is so deadlocked; the decision in each case must be based on the circumstances of that case. Id.
 {¶ 30} As previously noted, appellant did not object to the trial court's decision to issue the Howard charge. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 31} In U.S. v. Dominguez Benitez (2004), 542 U.S. 74,124 S.Ct. 2333 the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. SeeArizona v. Fulminante, 499 U. S. 279, 309-310 (1991) (giving examples).
 {¶ 32} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. SeeKotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict."Kotteakos, supra, at 776." *Page 10 124 S.Ct. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004), 101 Ohio St.3d 118,120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v.Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 33} In the case at bar, the jury found appellant not guilty of two counts of rape and two counts of gross sexual imposition. There is nothing in the record to suggest that the reading of the Howard charge caused the jury to feel coerced into finding appellant guilty of Count 1 and Count 4 of the indictment.
 {¶ 34} Under these circumstances, there is nothing in the record to show that the trial court abused its discretion or otherwise committed plain error in issuing a Howard charge to the jury in this case.
 {¶ 35} Appellant's first assignment of error is overruled.
 II. {¶ 36} In his second assignment of error appellant contends that the trial court erred in not allowing the jurors to take notes during the trial. We disagree.
 {¶ 37} In State v. Waddell, 75 Ohio St.3d 163, 661 N.E.2d 1043,1996-Ohio-100, paragraph one of the syllabus, the Court expressly held that "[a] trial court has the discretion to permit or prohibit note-taking by jurors." In the case at bar, appellant failed *Page 11 
to object to the trial court's decision concerning note taking by the jury, denying the trial court an opportunity to correct any error, and waiving all but plain error. State v. Waddell, supra,75 Ohio St.3d at 166, 661 N.E.2d at 1046; State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894; Crim.R. 30(A); Crim.R. 52(B).
 {¶ 38} In order to warrant reversal under a review for plain error, appellant "must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." Moreland at 63, 552 N.E.2d 894. Appellant has not made us aware of any facts or circumstances, and nothing in the record convinces us, that the outcome of his trial clearly would have been different had the jury been permitted to take notes. There is nothing in the record that convinces us that but for the actions of the trial court the jury would not have convicted appellant of the allegations contained in Count 1 and Count 4 of the indictment. State v. Waddell, supra,75 Ohio St.3d at 166, 661 N.E.2d at 1046. Further, there is no indication that the trial court acted unreasonably, arbitrarily, or unconscionably.State v. Waddell, supra, 75 Ohio St.3d at 171, 661 N.E.2d at 1049.
 {¶ 39} Accordingly, appellant's second assignment of error is overruled.
 III. {¶ 40} In his third assignment of error appellant argues that his separate convictions for rape and for gross sexual imposition constituted allied offenses of similar import and that therefore, he may only be sentenced on the greater offense. We disagree.
 {¶ 41} The federal and state constitutions' double jeopardy protection guards citizens against cumulative punishments for the "same offense."State v. Moss (1982), *Page 12 69 Ohio St.2d 515, 518. Despite such constitutional protection, a state legislature may impose cumulative punishments for crimes that constitute the "same offense" without violating double jeopardy protections.State v. Rance (1999), 85 Ohio St.3d 632, 635, citing Albernaz v.United States (1981), 450 U.S. 333, 344. Under the "cumulative punishment" prong, double jeopardy protections do "no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter (1983), 459 U.S. 359, 366. When a legislature signals its intent to either prohibit or permit cumulative punishments for conduct that may qualify as two crimes, the legislature's expressed intent is dispositive. Rance, at 635. Therefore, when determining the constitutionality of imposing multiple punishments against a criminal defendant in one criminal proceeding for criminal activity emanating from one transaction, appellate courts are limited to assuring that the trial court did not exceed the sentencing authority the legislature granted to the judiciary. Moss, at 518, citing Brown v.Ohio (1977), 432 U.S. 161. The trial court's authority to impose multiple punishments for conduct constituting both attempted murder and felonious assault is contained in Ohio's multi-count statute, R.C.2941.25.
 {¶ 42} "[I]f a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C.2941.25(B). State v. Jones (1997), 78 Ohio St.3d 12, 13-14,676 N.E.2d 80, 81." Rance, 85 Ohio St.3d at 635-636, 710 N.E.2d 699; State v.Cooper, 104 Ohio St.3d 293, 296, 2004-Ohiio-6553 at ¶ 13,819 N.E.2d 657, 660. R.C. 2941.25(A) applies when the state obtains multiple convictions arising out of the same conduct of a defendant that can be construed to constitute two or more allied offenses of similar import. Where the state has not relied *Page 13 
upon the same conduct of the defendant to support a conviction for the offense of rape and a separate conviction for gross sexual imposition the defendant may be convicted of both crimes and sentenced on each.
 {¶ 43} The record in the case at bar reflects that the state presented evidence at trial demonstrating that appellant committed two separate acts, at different times and in different locations. The victim testified that in the fall of 2003 appellant while in the living room appellant touched her vaginal area. (1T. at 114-116). The same conduct occurred in the bedroom the following day. (Id. at 116-118). Appellant then had intercourse with the victim's sister, after which he left the room. (Id. at 118-119). Upon his return to the bedroom appellant had intercourse with the victim. (Id. at 119-120).
 {¶ 44} Based on the foregoing, the record reflects that the state presented evidence at trial demonstrating that appellant committed two separate acts. Accordingly, the state did not rely on the same conduct to prove two offenses. Appellant's convictions did not originate from a single act; therefore, the trial court did not err in sentencing appellant for each offense.
 {¶ 45} Appellant's third assignment of error is overruled.
 IV. {¶ 46} In his fourth assignment of error appellant argues that the jurors hearing during voir dire and argument that only one witness was necessary to support a conviction for rape was prejudicial. We disagree.
 {¶ 47} Initially, there is no indication in the record that appellant raised any objection to the alleged prejudicial statements in the trial court. In order to warrant reversal under a review for plain error, appellant "must establish that the outcome of the *Page 14 
trial would clearly have been different but for the trial court's allegedly improper actions." Moreland at 63, 552 N.E.2d 894.
 {¶ 48} "Corroboration of victim testimony in rape cases is not required. See State v. Sklenar (1991), 71 Ohio App.3d 444, 447,594 N.E.2d 88; State v. Banks (1991), 71 Ohio App.3d 214, 220,593 N.E.2d 346; State v. Lewis (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854;State v. Gingell (1982), 7 Ohio App.3d 364, 365, 7 OBR 464,455 N.E.2d 1066." State v. Johnson, 112 Ohio St.3d 210, 217, 2006-Ohio-6404
at ¶ 53, 858 N.E.2d 1144, 1158. As there is no requirement that a rape victim's testimony be corroborated, the statements are correct statements of law.
 {¶ 49} There is nothing in the record that convinces us that but for the actions of the trial court the jury would not have convicted appellant of the allegations contained in Count 1 and Count 4 of the indictment. State v. Waddell, supra, 75 Ohio St.3d at 166,661 N.E.2d at 1046. Further, there is no indication that the trial court acted unreasonably, arbitrarily, or unconscionably. State v. Waddell,supra, 75 Ohio St.3d at 171, 661 N.E.2d at 1049.
 {¶ 50} Accordingly, appellant's fourth assignment of error is overruled.
 V. {¶ 51} In his fifth assignment of error appellant argues that the trial court erred in excusing a prospective juror for cause. We disagree.
 {¶ 52} The trial judge has discretion over the scope, length, and manner of voir dire. See State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128, 767 N.E.2d 166, at ¶ 40; State v. Getsy,84 Ohio St.3d 180, 190, 1998-Ohio-533, 702 N.E.2d 866. Accordingly, we will not find prejudicial error in a trial court's decision to conduct voir dire or how the *Page 15 
voir dire is conducted unless the appellant can show "a clear abuse of discretion." State v. Cornwell, 86 Ohio St.3d 560, 565,1999-Ohio-125, 715 N.E.2d 1144.
 {¶ 53} A trial court's ruling on a challenge for cause will not be overturned on appeal "unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion."State v. Williams (1997), 79 Ohio St.3d 1, 8, 679 N.E.2d 646; accordState v. Wilson (1972), 29 Ohio St.2d 203, 211, 58 O.O.2d 409,280 N.E.2d 915. Deference must be paid to the trial judge who sees and hears the juror. Wainwright v. Witt, 469 U.S. at 425-426, 105 S.Ct. 844,83 L.Ed.2d 841; State v. Williams, 79 Ohio St.3d at 8, 679 N.E.2d 646.
 {¶ 54} Initially, there is no indication in the record that appellant raised any objection to the alleged prejudicial statements in the trial court. In order to warrant reversal under a review for plain error, appellant "must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." Moreland at 63, 552 N.E.2d 894.
 {¶ 55} There is nothing in the record that convinces us that but for the actions of the trial court the jury would not have convicted appellant of the allegations contained in Count 1 and Count 4 of the indictment. State v. Waddell, supra, 75 Ohio St.3d at 166,661 N.E.2d at 1046. Further, there is no indication that the trial court acted unreasonably, arbitrarily, or unconscionably. State v. Waddell, supra,75 Ohio St.3d at 171, 661 N.E.2d at 1049.
 {¶ 56} Accordingly, appellant's fifth assignment of error is overruled. *Page 16 
 VI. {¶ 57} In his sixth assignment of error, appellant maintains the verdicts were against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 58} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 59} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 60} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest injustice,State v. Thompkins (1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be *Page 17 
reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 61} To find appellant guilty of rape, as charged in appellant's case, the jury would have to find that appellant engaged in sexual conduct with another being less than thirteen years of age. R.C.2907.02(A) (1) (b). "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 62} In the case at bar, the victim testified that appellant inserted his penis into her vagina. (1T. at 120). The victim further testified that appellant put his penis in her mouth. (1T. at 121-122). The victim's date of birth was established at trial as September 3, 1992. (1T. at 109). The incidents occurred in the fall of 2003. (1T. at 116).
 {¶ 63} Appellant argues on appeal that the victim was unable to give exact dates as to when the activities of the appellant were to occur. *Page 18 
 {¶ 64} Impreciseness and inexactitude of the temporal evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." State v. Robinette (Feb. 27, 1987), 5th
Dist. No. CA-652. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend him. Sellards, supra; State v. Gingell (1982), 7 Ohio App.3d 364,368, 455 N.E.2d 1066, 1071; State v. Kinney (1987), 35 Ohio App.3d 84,519 N.E.2d 1386. Appellant has not argued or alleged that the inexactitude prejudiced his ability to defend himself at trial.
 {¶ 65} Further, in Robinette, supra, this court stated: "[w]e note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. State v.Humfleet (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances."
 {¶ 66} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of rape of a person less than thirteen years of age.
 {¶ 67} We hold, therefore, that the State met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support appellant's conviction. *Page 19 
 {¶ 68} Although appellant cross-examined the victim and her sister regarding inconsistencies in and the vagueness of their testimony and further argued that no forensic evidence supported the allegations, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 69} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant engaged in sexual conduct with the victim who was less than thirteen years of age at the time. R.C.2907.02(A) (1) (b). Accordingly, appellant's conviction for rape was not against the manifest weight of the evidence.
 {¶ 70} In Count 4 of the Indictment appellant was charged with Gross Sexual Imposition. R.C.2907.05 (A) (4), Gross Sexual Imposition prohibits "sexual contact" when the offender knows the other person is less than thirteen years of age. "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person". R.C. 2907.01. Accordingly, touching the "erogenous zone" is what is prohibited. The female breast and genital are both included within this definition. *Page 20 
 {¶ 71} As previously set forth, the victim testified that in the fall of 2003 while in the living room appellant touched her vaginal area. (1T. at 114-116). The same conduct occurred in the bedroom the following day. (Id. at 116-118).
 {¶ 72} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of Gross Sexual Imposition.
 {¶ 73} We hold, therefore, that the State met its burden of production regarding each element of the crimes of gross sexual imposition and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 74} Although appellant cross-examined the victim and her sister regarding inconsistencies in and the vagueness of their testimony and further argued that no forensic evidence supported the allegations, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 75} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant had committed the crime of Gross Sexual Imposition.
 {¶ 76} Accordingly, appellant's conviction for gross sexual imposition is not against the manifest weight of the evidence. *Page 21 
 {¶ 77} Appellant's sixth assignment of error is overruled.
 VII. {¶ 78} In his seventh assignment of error, appellant argues that the trial court committed plain error and denied appellant his right to a fair trial by permitting the victim's sister and the prosecutor to opine as to the victim's credibility. In addition, appellant stresses that his right to a fair trial was seriously prejudiced by the misconduct of the prosecutor during closing arguments. As such, appellant alleges that the cumulative effect of the State's improper witness vouching and the prosecutor's misconduct seriously prejudiced his right to a fair trial. We disagree.
 {¶ 79} Evid.R. 103(A) provides that error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent. In the case at bar, counsel did not object at trial.
 {¶ 80} In order to warrant reversal under a review for plain error, appellant "must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." Moreland at 63, 552 N.E.2d 894.
 {¶ 81} Evid.R. 608(A) states that: "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." *Page 22 
 {¶ 82} In the instant matter, appellant contends that during the direct examination of the victim's sister, appellee improperly elicited her opinion as to the victim's truthfulness.
 {¶ 83} The opinion of a witness as to whether another witness is being truthful is inadmissible. State v. Kovac, 150 Ohio App.3d 676, 685,2002-Ohio-6784 at ¶ 35, 782 N.E.2d 1185, 1192(Citing State v.Boston (1989), 46, Ohio St.3d 108, 545 N.E.2d 1220); State v. Huff
(2001), 145 Ohio App.3d 555 561, 763 N.E.2d 695, 700. However, in the case at bar, the victim and her sister each testified and were subject to cross-examination. Further, the particular testimony of the sister is as follows:
 {¶ 84} "Q. Okay. Now, you are here today to testify in Ray Basham's case regarding your sister Shana's allegations against him?
 {¶ 85} "A. Correct.
 {¶ 86} "Q. You believe those allegations?
 {¶ 87} "A. Yes, I do.
 {¶ 88} "Q. Why do you believe those allegations?
 {¶ 89} "A. Because I seen [sic] it.
 {¶ 90} "Q. And can you tell the ladies and gentlemen of the jury how you seen this.
 {¶ 91} "A. I seen [sic] him having sex with my sister."
 {¶ 92} (1T. at 132-133). We find in the case at bar, any improper vouching was harmless beyond a reasonable doubt because the witness was an eyewitness to the rape of her sister relating what she, the witness, had personally observed occur between the appellant and the victim. *Page 23 
 {¶ 93} Appellant further argues that the prosecutor engaged in misconduct by commenting on his failure to testify. We disagree.
 {¶ 94} In his brief, the following comment made by the prosecutor in closing statement is cited as being improper:
 {¶ 95} "You've heard no evidence to the contrary." (2T. at 209).
 {¶ 96} Appellant cites no further statements made in closing argument as being improper.
 {¶ 97} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v.Maurer (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 98} The state may comment upon a defendant's failure to offer evidence in support of its case. State v. Collins (2000),89 Ohio St.3d 524, 733 N.E.2d 1118. "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The State must refrain from commenting on a decision not to testify, but the State may challenge the weight of *Page 24 
evidence offered by the defense in support of its theory of the case. Id. The State does not have a duty to disprove every possible circumstance suggested by the defendant. Id.
 {¶ 99} "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." State v. Petro (1948), 148 Ohio St. 473, 498, 162, 76 N.E.2d 355,367; State v. Champion (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141,143-144. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193,1993-Ohio-170, 616 N.E.2d 909,916.
 {¶ 100} In State v. demons the Ohio Supreme Court stated; "[t]he comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper,State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986),23 Ohio St.3d 16, 19-20, 23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; State v.Bies (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760."demons, supra, 82 Ohio St.3d 438, 452, 1998-Ohio-452, 692 N.E.2d 1009,1022.
 {¶ 101} The appellant in the case at bar mischaracterizes the prosecutor's statement. The prosecutor was commenting on the lack of evidence and not on the fact that appellant had not testified. Moreover, the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. (2T. at 235). Further, the trial court instructed the jury that the appellant had a constitutional right not to testify and the jury must not consider the fact *Page 25 
that he did not testify for any purpose. (2T. at 235-236). We presume that the jury followed the court's instructions. State v. Loza (1994),71 Ohio St.3d 61, 79, 641 N.E.2d 1082.
 {¶ 102} We find that the language used by the prosecutor in this case is not such that the jury would "naturally and necessarily" take it as comment on the failure of the accused to testify, and thus fails the test set forth in State v. Cooper (1977), 52 Ohio St.2d 163,370 N.E.2d 725, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137,57 L.Ed.2d 1157. State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906, 911.
 {¶ 103} Appellant's seventh assignment of error is overruled.
 VIII. {¶ 104} In his eight assignment of error, appellant maintains the trial court erred by admitting expert testimony which was vague and/or amounted to impermissible vouching. We disagree.
 {¶ 105} Appellant contends that the nurse practitioner substituted her judgment for that of the trier of fact by affirming the truthfulness of the child witness' testimony.
 {¶ 106} Courts have recognized the ability of nurse practitioners to testify as experts regarding medical findings, and to give an opinion as to whether a patient's physical condition is or is not consistent with a history of sexual abuse. See State v. Ramos (June 12, 1997), Cuyahoga App. No. 70129; State v. Pierce (Feb. 12, 1997), Summit App. No. 17684. However, a nurse practitioner may not testify that, despite the absence of physical evidence of abuse, the victim had been sexually abused. SeeState v. Crum (Oct. 26, 1998), Stark App. No. 97-CA-0134. *Page 26 
 {¶ 107} In the case at bar, nurse practitioner Justus testified that the victim gave a history of abuse and that there were normal physical findings upon examination. She further testified that her findings were consistent with the history given. Finally, nurse practitioner Justus testified that the victim identified two individuals as a perpetrator of the abuse. Nurse practitioner Justus never expressed an opinion as to whether the victim had been sexually abused. In fact, upon cross-examination by appellant's trial counsel she admitted that the findings were also consistent with a finding that no sexual abuse took place. (1T. at 175-177).
 {¶ 108} Nurse practitioner Justus' testimony was cumulative, and there is ample evidence in the record apart from her testimony upon which reasonable minds could find appellant committed the crimes with which he was charged. We do not find the admission of nurse practitioner Justus' testimony to have been prejudicial to appellant.
 {¶ 109} Appellant's eighth assignment of error is overruled.
 IX. {¶ 110} Appellant, in his ninth assignment of error, argues that the trial court erred in adjudicating him a sexual predator. We disagree.
 {¶ 111} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291,700 N.E.2d 570, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review appellant's assignment of error under the standard of review contained in C.E.Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578. State v. Wilson (2007), 113 Ohio St.3d 382, 2007-Ohio-2202. Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest *Page 27 
weight of the evidence. Id. at syllabus. R.C. 2950.01(E)(1) defines "sexual predator" as a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 112} R.C. 2950.09(B) (3) sets forth the relevant factors a trial court is to consider concerning the sexual predator issue:
 {¶ 113} "In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 114} "(a) The offender's or delinquent child's age;
 {¶ 115} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 116} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 117} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 118} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 119} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act *Page 28 
and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 120} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 121} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 122} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;"
 {¶ 123} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 124} The trial court has significant discretion in evaluating factors that may be relevant to its recidivism determination and such determinations are to be afforded great deference. State v.Robertson, 147 Ohio App.3d 94, 2002-Ohio-494, 768 N.E.2d 1207. The court has discretion to determine what weight, if any, it will assign to each statutory guideline. State v. Thompson 92 Ohio St.3d 584,2001-Ohio-1288, 752 N.E.2d 276. The trial court does not need to find a majority of the R.C. 2950.09(B)(2) factors to support a sexual predator determination; rather, an appellant may be so adjudicated even if only one or two of the factors are present as long as the totality of the circumstances provides clear and convincing evidence that the appellant is likely to commit a sexually *Page 29 
oriented offense in the future. State v. Murphy, 11th
Dist. No. 2003-L-049, 2005-Ohio-412 at ¶ 41.
 {¶ 125} Appellant, in the case sub judice, specifically contends that there was not clear and convincing evidence that he is likely to engage in the future in one or more sexually oriented offenses. Appellant notes, in part, that the rape and gross sexual imposition convictions in this case were his only convictions for a sexually oriented offense, that there was only one victim of the sexual assault in the case sub judice, and that he has no prior criminal record of convictions.
 {¶ 126} In State v. Eppinger (2001), 91 Ohio St.3d 158, 2001-Ohio-247,743 N.E.2d 881, the Court noted; "under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication." Id. at 162, 743 N.E.2d at 881. The Court cautioned, however, "[b]ut a person who has been convicted of or who has pled guilty to committing one sexually oriented offense is not necessarily likely to engage in the future in one or more sexually oriented offenses. One sexually oriented offense is not a clear predictor of whether that person is likely to engage in the future in one or more sexually oriented offenses, particularly if the offender is not a pedophile. Thus, we recognize that one sexually oriented conviction, without more, may not predict future behavior." (Id).
 {¶ 127} However, "substantial evidence exists which indicates that child sex offenders are generally serial offenders. Specifically, in considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated: `Evidence suggests that child sex offenders are generally serial offenders. Indeed one recent study concluded the *Page 30 
`behavior is highly repetitive, to the point of compulsion,' and found that 74 percent of imprisoned child sex offenders had one or more prior sexual offenses against a child.' See H.R. Rep. No. 392, 103rd Congress (1993). Furthermore, in State v. Eppinger, supra, the Supreme Court stated, "Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters." Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis (1997), 21 Law Human Behavior 635, 651.
 {¶ 128} "Furthermore, the United States Supreme Court, in McKune v.Lile (2002), 536 U.S. 24, 32-33, 122 S.Ct. 2017, 153 L.Ed.2d 47, stated `the victims of sex assault are most often juveniles,' and `[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.
 {¶ 129} "In accordance, we can only conclude that the lower court was free to give due deference to the statistical likelihood of appellant's re-offending . . . Although the Ohio Supreme Court in Eppinger, supra, did not establish a bright-line rule that courts can rely solely on statistical evidence in making a sexual predator determination, it nevertheless endorsed the lower court's ability to give due weight to a statistical likelihood that sexual offenders of children are likely to re-offend when conducting its sexual predator determination. *Page 31 
 {¶ 130} "Further, in drafting R.C. Chapter 2950, the legislature recognized the existing statistical evidence, which overwhelmingly indicates that recidivism among pedophile offenders is highest. As stated in State v. Ellison, supra, the General Assembly passed the sexual predator laws in part because sexual predators `pose a high risk of engaging in further offenses even after being released from imprisonment.' Moreover, the United States Supreme Court has recognized that, statistically, convicted sex offenders who reenter society are much more likely than any other type of offender to be rearrested for a new rape or sex assault. McKune, supra." State v. Purser (2003), 153 Ohio App.3d 144,151-52, 2003-Ohio-3345 at ¶ 39-40, 791 N.E.2d 1053,1058-59; State v. Ashbrook, 5th Dist. No. 2004-CA-00109,2005-Ohio-740, reversed on other grounds and remanded for re-sentencing pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. See,In re: Ohio Criminal Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109.
 {¶ 131} In the case at bar, the trial court noted, that appellant was fifty years old. (Sent. T., January 29, 2007 at 12). R.C. 2950.09(B) (3) (a). The age of the victim was eleven or twelve years old at the time of the offense. (Sent. T., January 29, 2007 at 12). R.C. 2950.09(B) (3) (c)."The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct." State v. Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830.
 {¶ 132} The trial court additionally noted that the victim's sister testified that appellant committed acts of sexual abuse against her that were not charged. In State v. Cook, 83 Ohio St.3d 404, 425,1998-Ohio-291, 700 N.E.2d 570 the Supreme Court of Ohio held that a court might rely on reliable hearsay, such as a pre-sentence *Page 32 
investigation report, when making its sexual predator determination. Id. Further, evidence of uncharged sexual assaults is admissible at a sexual predator hearing. See State v. McElfresh (July 14, 2000), Washington App. No. 99CA36 (recognizing that the existence of other victims of sexual abuse is relevant when determining whether an offender should be classified as a sexual predator). See, also, State v.Jones, Belmont App. No. 02 BE 36, 2003-Ohio-1219, at ¶ 24; State v.Burgess (July 10, 2000), Fayette App. No. CA99-08-021.
 {¶ 133} In the case at bar, the victim's sister testified at trial and was subject to cross-examination. Accordingly, the trial court could rely upon her testimony in finding appellant's actions involved multiple victims. R.C. 2950.09(B) (3) (d).
 {¶ 134} Upon review, we find that the trial court considered the elements set forth in R.C. 2950.09(B) (3) and that there was competent, credible evidence to support the sexual predator findings made by the trial court at the classification hearing.
 {¶ 135} Appellant's ninth assignment of error is therefore overruled.
 X. {¶ 136} In his tenth assignment of error appellant argues that he was denied due process of law because the trial court failed to properly consider the purposes and principles of sentencing.
 {¶ 137} At the outset we note, there is no constitutional right to an appellate review of a criminal sentence. Moffitt v. Ross (1974),417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKane v. Durston (1894),152 U.S. 684, 687, 14 S.Ct. 913. 917; State v. Smith (1997),80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668; State v. Firouzmandi, 5th Dist No. 2006-CA-41, 2006-Ohio-5823. This proposition has been firmly established as *Page 33 
noted by the Ohio Supreme Court: "[t]he United States Supreme Court inEstelle v. Dorrough (1975), 420 U.S. 534, 536, 95 S.Ct. 1173, 1175,43 L.Ed.2d 377, 380, held, `there is no federal constitutional right to state appellate review of state criminal convictions.' The Supreme Court has stated that `the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance.' State ex rel. Bryant v. Akron Metro. Park Dist. (1930),281 U.S. 74, 80, 50 S.Ct. 228, 230.
 {¶ 138} An individual has no substantive right to a particular sentence within the range authorized by statute. Gardner v. Florida
(1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 1204-1205. In other words "[t]he sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus. It is not the duration or severity of this sentence that renders it constitutionally invalid. . . ." Townsend v. Burke (1948),334 U.S. 736, 741, 68 S.Ct. 1252, 1255. However, "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process. See Witherspoon v.Illinois, 391 U.S. 510, 521-523, 88 S.Ct. 1770, 1776-1778,20 L.Ed.2d 776". Gardner v. Florida (1977), 430 U.S. 349, 358, 97 S.Ct. 1197,1204-1205.
 {¶ 139} Under Ohio law, judicial fact-finding is no longer required before a court imposes consecutive or maximum prison terms. SeeState v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856;State v. Mathis, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. Instead, the trial court is vested with discretion to impose a prison term *Page 34 
within the statutory range. See Mathis, at ¶ 36. In exercising its discretion, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself." Id. at ¶ 37. Thus, post-Foster, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. State v.Rutter, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061; State v. Delong, 4th Dist. No. 05CA815, 2006-Ohio-2753 at ¶ 7-8. Therefore, post-Foster, trial courts are still required to consider the general guidance factors in their sentencing decisions.
 {¶ 140} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. State v.Polick (1995), 101 Ohio App.3d 428, 431; State v. Gant, Mahoning App. No. 04 MA 252, 2006-Ohio-1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing State v. Cyrus (1992),63 Ohio St.3d 164, 166; State v. Hughes, Wood App. No. WD-05-024, 2005-Ohio-6405, at ¶ 10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), State v. Woods, 5th Dist. No. 05 CA 46, 2006-Ohio-1342 at ¶ 19 (". . . R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted). *Page 35 
 {¶ 141} Where the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation. Where the record adequately justifies the sentence imposed, the court need not recite its reasons.State v. Middleton (Jan. 15, 1987), 8th Dist. No. 51545. In other words, an appellate court may review the record to determine whether the trial court failed to consider the appropriate sentencing factors. State v.Firouzmandi, 5th Dist No. 2006-CA41, 2006-Ohio-5823 at ¶ 52.
 {¶ 142} Accordingly, appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors. Cincinnati v.Clardy (1978), 57 Ohio App.2d 153, 385 N.E.2d 1342. An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant. Woosley v. United States (1973),478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. Woosley, supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence. Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of sentence in a particular case. State v.Firouzmandi, supra.
 {¶ 143} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible *Page 36 
factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.
 {¶ 144} Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant.
 {¶ 145} Further the fact that the trial court explained his reasons for imposing sentence does not violate a defendant's rights. InState v. Goggans, Delaware App. No. 2006CA070051, 2207-Ohio-1433 this Court noted:
 {¶ 146} "The court could have imposed the maximum sentence without making any statement on the record. The fact that the trial judge explained his reasons for imposing the maximum sentence on the record cannot transform a sentence within the ranges provided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible `judicial fact-finding.'"
 {¶ 147} Accordingly, the mere fact that the trial court used language from R.C. 2929.14(C) to explain a sentencing decision does not affect the sentence of appellant. This Court does not find the use of this language to be unreasonable, arbitrary or unconscionable.
 {¶ 148} Appellant's tenth assignment of error is overruled. *Page 37 
 XI. {¶ 149} In his eleventh assignment of error appellant asserts that the cumulative effect of the errors alleged in his appeal warrant reversal of his convictions. We disagree.
 {¶ 150} Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. State v. Garner (1995),74 Ohio St.3d 49, 64, 656 N.E.2d 623, certiorari denied (1996), 517 U.S. 1147,116 S.Ct. 1444, 134 L.Ed.2d 564. Because we have found no instances of error in this case, the doctrine of cumulative error is inapplicable.
 {¶ 151} Therefore, we reject appellant's eleventh assignment of error.
 {¶ 152} For the foregoing reasons, the judgment of the Muskingum County Court of Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Hoffman, J., and Delaney, J., concur *Page 38 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1